# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### CIVIL CASE NO. 3:22-cv-00114-MR

| | | |
|---|---|---|
| NAFIS AKEEM-ALIM ABDULLAH-MALIK,[1] | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | <u>MEMORANDUM OF DECISION AND ORDER</u> |
| EDDIE CATHEY, et al., | ) ) | |
| Defendants. | ) ) ) | |

**THIS MATTER** is before the Court on initial review of the Plaintiff's pro Amended Complaint [Doc. 18]. The Plaintiff is proceeding in forma pauperis. [Doc. 9].

## I.    BACKGROUND

The pro se Plaintiff, who is a pretrial detainee at the Mecklenburg County Jail, filed this case pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Union County Jail (UCJ) between July 29, 2020

---

[1] According to the Mecklenburg County Sheriff's Office (MCSO) website, the Plaintiff's name is Nafisakeem Abdullah Malik. <u>See</u> https://mecksheriffweb.mecklenburgcountync. gov/Inmate/Details?pid=0000213386&jid=20051671&activeOnly=True&prisType=ALL& maxrows=48&page=1 (last accessed June 15, 2022); Fed. R. Evid. 201. The website reflects that the Plaintiff was detained on December 19, 2020 on multiple charges including conspiracy, felony larceny, and breaking or entering.

and December 19, 2020.[2]  [Doc. 1].  Before the Complaint was screened for frivolity, the Plaintiff filed a number of Motions in which he attempted to present piecemeal allegations and sought leave to amend.  [See Docs. 3, 12, 16].  On May 5, 2022, the Court struck the Plaintiff's Motions and granted him 30 days to file a superseding Amended Complaint.  [Doc. 17].  The Court instructed the Plaintiff to submit his Amended Complaint on a § 1983 form, clearly identify the Defendants against whom he intends to proceed, and set forth facts describing how each of the Defendants allegedly violated his rights.  [Id at 4].  The Amended Complaint [Doc. 18] is now before the Court for initial review.

The Plaintiff names as Defendants: Eddie Cathey, the sheriff of Union County; D. Rogers, a Union County Sheriff's Office (UCSO) captain and the UCJ administrator; FNU Pursor, FNU Rucker, and FNU Philmore, UCSO sergeants;  FNU Kiker, FNU Hodgens, K. Martin, and FNU Grooms, UCSO deputies and detention officers; Pam LNU and FNU Speers,  Union County Health Department nurses; Bill Beam, the sheriff of Lincoln County; Mike Miller, the Lincoln County district attorney; Kevin Tolson, the sheriff of York

---

[2] Although the Plaintiff contends that the claims are "carrying over to date in part inasmuch Union County participating in 1st, 4th, 5th, 6th, 8th, & 14th Amend violation," he fails to address any incidents that are alleged to have occurred since he entered MCJ on December 19, 2020.  [Doc. 18 at 8].

County; Lori Fields, a field agent and administrator for the York County Sheriff's Office; and "Jane-John Does at all relevant times."[3] [Doc. 18 at 5-7, 9]. He asserts claims that his rights have been violated under "(1st) (4th) (5th) (6th) (8th), and (14th) Amendments N.C. Gen. Stat. Chapter 17 (habeas corpus) N.C. Gen. Stat. § 15A601-603, and N.C. Gen. Stat. § 15A-721 - § 760." [Id. at 5]. As injury, he asserts: "enhanced PTSD, anxiety, OCD & EBD psychological effects long term (23-1) twenty three and one lockup mental health disorders. Taser prongs never removed, broken neck vertebral enhanced cervical spinal stenosis, neuropathy, numbness in part paralysis…." [Id. at 14]. He seeks a declaratory judgment, and compensatory and punitive damages. [Id.].

## II.   STANDARD OF REVIEW

Because the Plaintiff is proceeding in forma pauperis, the Court must review the Amended Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and

---

[3] The Plaintiff specifies that he is asserting claims against Defendants Cathey, Rogers, Pursor, Rucker, Philmore, Kiker, Hodgens, Marin, and Grooms in their individual and official capacities. [Doc. 18 at 4-6]. He does not indicate whether he is attempting to sue the remaining Defendants in their official capacities, individual capacities, or both.

3

dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Amended Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

### A.    Parties

The body of the Amended Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a) of the Federal Rules of Civil Procedure.  [See, e.g., Doc. 18 at 10-11 (referring to Deputy Steward)]; Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"); Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."); Perez v. Humphries, No. 3:18-cv-107-GCM, 2018 WL 4705560, at *1 (W.D.N.C. Oct. 1, 2018) ("A plaintiff's failure to name a defendant in the caption of a Complaint renders any action against the purported defendant a legal nullity").  The allegations directed at individuals not named as Defendants are dismissed without prejudice.

The Plaintiff names as Defendants "Jane-John Does at all times relevant."  [Doc. 18 at 7, 9].  John Doe suits are permissible only against "real, but unidentified, defendants."  Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982).  The designation of a John Doe defendant is generally not favored in the federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery. See Chidi Njoku v. Unknown Special Unit Staff, 217 F.3d 840 (4th Cir. 2000).

"[I]f it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice." Schiff, 691 F.2d at 198 (footnote omitted). Here, the Plaintiff fails to make any factual allegations regarding the Doe Defendants whatsoever. See Fed. R. Civ. P. 8(a) (a short and plain statement of the claim is required); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). Further, he has not demonstrated any likelihood that these Defendants could be identified through discovery. See Schiff, 691 F.2d at 198. Therefore, Defendants "John-Jane Doe" are dismissed without prejudice from this action.

As to Defendants Beam, Miller, Tolson, and Fields, the Amended Complaint contains no factual allegations against them. Accordingly these individuals will be dismissed as Defendants from this action. See Fed. R. Civ. P. 8(a); Dickson, 309 F.3d at 201-02.

Many of the Plaintiff's claims are so vague and confusing that the Court cannot determine the incidents that are alleged to have occurred, or cannot identify the Defendant(s) to whom the allegations refer.[4] See Fed. R. Civ. P.

---

[4] For instance, he alleges: "I have been discriminated against by Sheriff Eddie Cathey, et al. at all times relevant, biasly [sic], arbitrary, capricious, wanton acts … and Jail Administrator et al., Captain D. Rogers watched observed [and] [r]efused to intervene"

6

8(a); <u>Dickson</u>, 309 F.3d at 201-02; <u>see</u> <u>also</u> <u>Pliler v. Ford</u>, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants."); <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985) (the courts are not required to be "mind readers" or "advocates" for incarcerated or pro se litigants). These claims are dismissed as frivolous and for failure to state a claim upon which relief can be granted.

## B. Official Capacity Claims

The Plaintiff purports to sue Defendants Cathey, Rogers, Pursor, Rucker, Philmore, Kiker, Hodgens, Martin, and Grooms in their official capacities. Suits against sheriffs and their employees in their official capacities are, in substance, claims against the office of the sheriff itself. <u>Gannt v. Whitaker</u>, 203 F.Supp.2d 503, 508 (M.D.N.C. Feb. 26, 2002). To succeed on such a claim, a plaintiff must allege that a Sheriff's Office policy or custom resulted in the violation of federal law. <u>See</u> <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658, 694 (1978) (holding that in an official capacity suit, the entity's "policy or custom" must have played a part

---

[Doc. 18 at 15]; "racially motivated, maliciously, malice gross negligence, arbitrary, capricious, wanton care" [<u>id.</u>]; "[o]ngoing medical negligence, gross negligence, impeded requests, grievances, negated wheelchair usage, negated impeded other RN LPN notes to (HCP) health Care Providers abuse of fall risk status fabricated to take mattress house in remote area of abuse" [<u>id.</u>]; "Rucker Sergeant, et al., at all times relevant all applies as above listed Defendant Pursor et al. precluding detention with Deputy Steward and precluding groping" [<u>id.</u> at 11]; and "… ongoing medical gross negligence, mail impediments, no access to adequate law library (etc)…." [<u>id.</u> at 16].

in the violation of federal law); <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 818-20 (1985) (discussing same).  Here, the Plaintiff does not allege that any Sheriff's Office policy or custom played a part in the alleged violation of his constitutional rights.  Accordingly, the Plaintiff's official-capacity claims against these Defendants are dismissed without prejudice.[5]

## C.    Grievances

The Plaintiff claims that Defendant Cathey "was served notices via kiosk (electronic) request and grievance U.S. Mail Postal Service regarding his subordinate(s) et al. misconduct and refuse[d] to cure, to include notice(s) by and through the Union County Court."  [Doc. 18 at 9].

To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation.  <u>See</u> <u>Vinnedge v. Gibbs</u>, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted).  As such, the doctrine of respondeat superior does not apply in actions brought under § 1983.  <u>See</u> <u>Monell</u>, 436 U.S. at 694.  However, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the

---

[5] To the extent that the Plaintiff intended to sue the remaining Defendants in their official capacities, any such claims are dismissed for the same reasons.

alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Here, the Plaintiff appears to allege that Defendant Cathey's only involvement with the incidents at issue was by failing to address the Plaintiff's complaints and grievances. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). Because the Plaintiff has no constitutional right to a grievance procedure, Defendant Cathey's alleged failure to address his grievances does not state a § 1983 claim.

These allegations are also too vague and conclusory to state a claim against Defendant Cathey on a theory of supervisory liability. The Plaintiff does not plausibly allege that Defendant Cathey had any actual knowledge of any alleged violations of the Plaintiff's constitutional rights, tacitly authorized or was deliberately indifferent to the same, or that any causal relationship existed between Cathey's conduct and the Plaintiff's constitutional injury. It appears instead that the Plaintiff is attempting to hold

Defendant Cathey liable on a theory of respondeat superior, which fails to state a § 1983 claim. Accordingly, the claims against Defendant Cathey are dismissed.

### D.   Failure to Investigate

The Plaintiff claims that Defendant Rogers failed to conduct an investigation that was ordered by a "Judge Williams."[6] [Doc. 18 at 15]. The Plaintiff had no constitutional right to an investigation, and therefore, Defendant Rogers' alleged failure to conduct an investigation fails to state a § 1983 claim. See generally DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); see, e.g., Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002) (arrestee had no constitutional right to internal investigation of excessive force claim); Savage v. County of Stafford, Va., 754 F.Supp.2d 809 (E.D. Va. 2010) (deputy sheriff's alleged failure to document and investigate arrestee's alibi did not violate due process). Accordingly, this claim is dismissed.

---

[6] The Plaintiff does not identify the court or case number, or describe the issues that were supposed to be investigated.

### E. Excessive Force and Sexual Contact

The Plaintiff claims that Defendants Martin, Hodgens, and Grooms physically assaulted him [Doc. 18 at 12]; that Defendant Pursor groped his penis [id. at 15]; and that Defendant Kiker threatened, pushed, and shoved him [id. at 12].

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396). "Included within this protection is a pre-trial detainee's liberty interest to be free from unwanted sexual contact by prison officials." Rush v. Bryant, 2021 WL 1608345, at *3 (S.D.W. Va. Feb. 22, 2021); see Young v. Muncy, 2020 WL 1521799, at *4 (S.D.W. Va. March 30, 2020)

("Sexual assault is not a legitimate part of a prisoner's punishment, particularly … where Plaintiff is a pretrial detainee….").

Taking the Plaintiff's allegations as true for the purposes of initial review and drawing all reasonable inferences in his favor, the Plaintiff's claims against Defendants Martin, Hodgens, Grooms, Pursor, and Kiker for excessive force and sexual contact are sufficient to pass initial review and require a response from the Defendants.

### F.    Conditions of Confinement

The Plaintiff claims that he was subjected to inhumane conditions of confinement.    Specifically, he alleges that Nurse Pam LNU ordered Defendants Rucker and Pursor to take the Plaintiff from medical to a remote "drunk tank" cell for "torture" twice, where there was "no toilet, no running water, no natural light, no windows in cell and door blacked out," the Plaintiff's "clothes torn off of [him]…," "no shower curtain," "no recreation, showers (whenever)," and that this happened in Defendant Grooms' presence [Doc. 18 at 11, 13, 15]; that Defendant Philmore permitted the foregoing and "add[ed] unfounded long term segregation incidents;" [id. at 11]; and that Defendant Rogers "ordered … segregations longated [sic] escalated" [id. at 10].  He claims that the foregoing resulted in "psychological mental anguish…."  [Id. at 11].

12

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.[7]  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).  "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment."  Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997).  Rather, extreme deprivations are required, and "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation omitted)).  Further, a plaintiff must allege and prove facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm.  See Farmer v. Brennan, 511 U.S. 825, 847 (1994).

---

[7] Because the Plaintiff was a pre-trial detainee at the relevant times, his deliberate indifference claims are properly brought under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment.  See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983).  However, the Fourth Circuit has long applied the Eighth Amendment deliberate indifference standard to pretrial detainees' deliberate indifference claims.  See Moss v. Harwood, 19 F.4th 614, 624 n.4 (4th Cir. 2021) (noting that, "under Kingsley v. Hendrickson, 576 U.S. 389, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), pretrial detainees bringing excessive force claims under the Fourteenth Amendment are no longer required to satisfy the analogous subjective component that governs the Eighth Amendment excessive force claims of convicted prisoners ... [however] the Supreme Court has not extended Kingsley beyond the excessive force context to deliberate indifference claims, ... and neither has our court...."); Mays v. Sprinkle, 992 F.3d 295, 300-02 (4th Cir. 2021) (declining to decide whether a pretrial detainee must satisfy the subjective component of the Eight Amendment deliberate indifference standard).

13

Taking the Plaintiff's allegations as true for the purposes of initial review and drawing all reasonable inferences in his favor, the Plaintiff's claim against Defendants Pam LNU, Rucker, Pursor, Philmore, Rogers, and Grooms for imposing unconstitutional conditions of confinement is sufficient to pass initial review and require a response from the Defendants.

### G. Deliberate Indifference to a Serious Medical Need

The Plaintiff claims that Nurse Pam LNU "[r]efus[ed] to provide medicine…, [sought] non-treatment to Plaintiff refusing to provide wheelchair access by health care provider, … remov[ed] double mattress orders for antagonistic purposes to enhance agony pain suffering mental anguish" [id. at 13]; and that Nurse FNU Speers "[a]t all times relevant refused treatment medicines – failed to provide health care provider accurate sick call [and] [m]ental health requests" [id.].

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment.[8] Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants

---

[8] See note 7, *supra*.

actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Taking the Plaintiff's allegations as true for the purposes of initial review and drawing all reasonable inferences in his favor, the Plaintiff's claims against Defendants Pam LNU and FNU Speers for deliberate indifference to a serious medical need are sufficient to pass initial review and require a response from the Defendants.

## H.    Retaliation

The Plaintiff claims that Defendant Rogers "ordered retaliations" after Judge Williams ordered Rogers to "investigate and cure…" [Doc. 18 at 10]; and that Defendant Grooms "invoked" Defendants Martin and Hodgens to use excessive force against the Plaintiff in retaliation for having filed a grievance against her [id. at 12].

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right." Suarez Corp. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (citing Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017); quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)). Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Adams, 40 F.3d at 74. In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Id.

Taking the Plaintiff's allegations as true for the purposes of initial review and drawing all reasonable inferences in his favor, the Plaintiff's

claims against Defendants Rogers and Grooms regarding retaliation are sufficient to pass initial review and require a response from the Defendants.

## I. Supplemental Jurisdiction

Federal district courts may entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims ... within [federal-court competence] that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To exercise supplemental jurisdiction, a court must find that "[t]he state and federal claims ... derive from a common nucleus of operative fact" where a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). When a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] all related state claims." Artis v. Dist. of Columbia, 138 S.Ct. 594, 595 (2018); see 28 U.S.C. § 1367(c)(3). A district court may also dismiss the related state claims if there is a good reason to decline jurisdiction. See § 28 U.S.C. § 1367(c)(1), (2), and (4). Without a viable § 1983 claim, the Court will not exercise supplemental jurisdiction over an alleged violation of North Carolina law. See Artis, 138 S.Ct. at 595 (when a district court dismisses all claims independently qualifying for the exercise of federal

jurisdiction, it "ordinarily dismiss[es] all related state claims."); see 28 U.S.C. § 1367(c)(3).

First, the Plaintiff refers to his pretrial detention, and sections of the North Carolina General Statutes addressing: habeas corpus;[9] preliminary proceedings in a criminal case;[10] and the Uniform Criminal Extradition Act.[11] [Doc. 18 at 5, 14]. By citing the foregoing, it appears that the Plaintiff is asking the Court to insert itself into his pending criminal proceedings, and/or seeking to challenge the fact or duration of his present confinement. The Court has previously informed the Plaintiff in another civil rights case, No. 3:21-cv-00667-MR, that he may not challenge the conditions of his confinement and the fact or duration of his present detention in the same action. [See Civil Case No. 3:21-cv-667, Docs. 21, 23, 33]. Moreover, the Supreme Court held in Younger v. Harris, 401 U.S. 37 (1971), that a federal court should not interfere with state criminal proceedings except in the most narrow and extraordinary of circumstances. Id. at 43-44. Under the abstention doctrine, abstention is proper in federal court when (1) there is an ongoing state court proceeding; (2) the proceeding implicates important state

_____

[9] N.C.G.S. Chapter 17.

[10] N.C.G.S. §§ 15A-601 through -603, which address first appearance, warning of right against self-incrimination, and assuring a defendant's right to counsel, respectively.

[11] N.C.G.S. §§ 15A-721 through -760.

interests; and (3) the petitioner has an adequate opportunity to present the federal claims in the state proceeding. <u>Emp'rs Res. Mgmt. Co. v. Shannon</u>, 65 F.3d 1126, 1134 (4th Cir. 1995). Here, the Petitioner has not shown that his case presents those "most narrow and extraordinary of circumstances" that would qualify as an exception to <u>Younger</u> abstention and necessitate federal intervention. <u>See</u> <u>Gilliam v. Foster</u>, 75 F.3d 881, 903 (4th Cir. 1996). The Court would, therefore, abstain from addressing the Plaintiff's claims while state court criminal charges are pending against him in any event.

Construing the Amended Complaint liberally, the Plaintiff also appears to assert assault and battery claims against Defendants Martin, Hodgens, Grooms, Pursor, and Kiker.[12] [Doc. 18 at 10, 12].

North Carolina assault is an offer to show violence to another without striking him, and battery is the carrying of the threat into effect by the infliction of a blow. <u>See</u> <u>generally</u> <u>Dickens v. Puryear</u>, 302 N.C. 437, 445, 276 S.E.2d 325, 330 (1981). While a civil action for assault is available under North Carolina law against one who uses force for the accomplishment of a legitimate purpose such as justifiable arrest, the use of such force under the given circumstances must be excessive for the claimant to prevail. <u>Myrick v.</u>

---

[12] The Plaintiff refers only to "assault" but the allegations are liberally construed to include claims of assault and battery under North Carolina law.

Case 3:22-cv-00114-MR   Document 20   Filed 06/22/22   Page 19 of 22

<u>Cooley</u>, 91 N.C.App. 209, 215, 371 S.E.2d 492, 496 (1988). "The question of '[w]hether an officer has used excessive force is judged by a standard of objective reasonableness.'" <u>Jordan v. Civil Service Bd.</u>, 153 N.C.App. 691, 698, 570 S.E.2d 912, 918 (2002) (quoting <u>Clem v. Corbeau</u>, 284 F.3d 543, 550 (4th Cir. 2002)).

The Plaintiff's § 1983 excessive force and sexual act claims have passed initial review against Defendants Martin, Hodgens, Grooms, Pursor, and Kiker, and the Plaintiff appears to assert assault and battery claims against them for the same incidents. The allegations plausibly state assault and battery claims under North Carolina law and the Court will, therefore, exercise supplemental jurisdiction over the claims at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the Plaintiff's claims have passed initial review against Defendants Martin, Hodgens, Grooms, Pursor, and Kiker for excessive force and sexual contact; against Defendants Pam LNU, Rucker, Pursor, Philmore, Rogers, and Grooms for imposing unconstitutional conditions of confinement; Defendants Pam LNU and Speers for deliberate indifference to a serious medical need; and against Defendants Rogers and Grooms for retaliation. The Court will exercise supplemental jurisdiction over the Plaintiff's North Carolina assault and

battery claims against Defendants Martin, Hodgens, Grooms, Pursor, and Kiker.  The remaining claims fail initial review and are dismissed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Plaintiff's  claims have passed initial review against Defendants Martin, Hodgens, Grooms, Pursor, and Kiker for excessive force and sexual contact; against Defendants Pam LNU, Rucker, Pursor, Philmore, Rogers, and Grooms for imposing unconstitutional conditions of confinement;  against Defendants Pam LNU and Speers for deliberate indifference to a serious medical need; and against Defendants Rogers and Grooms for retaliation.

2. The Court will exercise supplemental jurisdiction over the Plaintiff's North Carolina assault and battery claims against Defendants Martin, Hodgens, Grooms, Pursor, and Kiker.

3. The Plaintiff's remaining claims are **DISMISSED** as stated in this Order.

4. The Clerk of Court is respectfully instructed to mail 10 blank summonses to Plaintiff to fill out for service of process on Defendants Grooms, Hodgens, Kiker, Martin, Pam LNU, Philmore, Pursor, Rogers, Rucker, and Speers, and then return the

summonses to the Court.  The Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service on Defendants.  As the Court receives the summonses from Plaintiff, the Clerk shall direct the U.S. Marshal to effectuate service upon Defendants

5. The Clerk is respectfully instructed to terminate Eddie Cathey, John-Jane Doe, Bill Beam, Kevin Tolson, Mike Miller, and Lori Fields as Defendants in this matter.

**IT IS SO ORDERED**.

Signed: June 22, 2022

Martin Reidinger
Chief United States District Judge